**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    2:19-cv-04794

| | |
|---|---|
| Russell Kane, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| Turkey Hill, L.P. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Turkey Hill, L.P. ("defendant") manufactures, distributes, markets, labels and sells ice cream and novelties labeled as types of, or containing vanilla ice cream under the Turkey Hill brand ("Products").[1]

2.      The Products are available to consumers nationwide from third-party retailers, including brick and mortar and online stores, directly from defendant's website and from its convenience stores in the following forms:  pint (.5 QT/.47 L/ 16 FL OZ), quart (1.5 QT/1.42L/48 FL OZ), sandwiches (.12 L/4 FL OZ) and cones (.14 L/4.6 FL OZ).

3.      The relevant product lines include (1) All Natural Ice Cream, (2) Premium Ice Cream, (3) Light Ice Cream, (4) No Sugar Added Ice Cream, (5) Ice Cream Sandwiches, (6)

---

[1] "Novelties" refers to products other than ice cream sold by the carton, such as ice cream sandwiches, cones, etc.

Sundae Cones and (7) Individual Selections.

4.    At any given time, defendant sells approximately ninety-five (95) stock-keeping units (SKU) of ice cream products across its Product Lines.

5.    Approximately half of these 95 contain a form of vanilla ice cream, whether exclusively or part of an ice cream combination.

6.    The following table contains products represented as containing vanilla ice cream in two Product Lines.

|   All Natural   |   Premium   |
|---|---|
| Homemade Vanilla | Homemade Vanilla |
| Vanilla Bean | French Vanilla |
| Vanilla Bean & Chocolate | Original Vanilla |
| Vanilla Peanut Butter | Vanilla |
|  | Vanilla & Chocolate |
|  | Vanilla Bean |
|  | Vanilla Chocolate Crunch |

7.    This list is non-exhaustive as both of these Product Lines contain ice cream combinations and vanilla ice cream is featured and understood as a component of these varieties, such as Cookies and Cream, Caramel and Orange Crème varieties.

8.    The representations of the Products are misleading because they misrepresent the exclusive flavor source, the amount of vanilla, the percentage of vanilla compared to the overall flavor component.

I.   Vanilla is Perennial Favorite Flavor for Ice Cream

9.    Ice cream is a year-round treat enjoyed by 96% of Americans.[2]

---

[2] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018

10.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[3]

11.    Of all the flavors, vanilla is the consistent number one for 28% of consumers, confirmed the two groups who supply ice cream – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

12.    The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

13.    The applications of vanilla ice cream include as the centerpiece of an ice cream sandwich (vanilla ice cream between chocolate wafers), topping a warm slice of oven-fresh apple pie, in a hot fudge Sunday or dunked in a cold frothy glass of root beer (float).[5]

14.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[6]

15.    Thomas Jefferson thought his first American recipe for vanilla ice cream was so valuable that he entrusted the Free Masons to conceal it within clues and puzzles.[7]

II.  Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

16.    In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla

---

[3] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com.
[4] Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[6] Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress.

consumed [in the United States] as all other flavors together."[8]

17.    The global landscape since The Pure Food and Drugs Act, enacted in 1906 to "protect consumer health and prevent commercial fraud," has changed little.[9]

18.    Daily headlines alert us to this resurgent international threat of "food fraud"– whether olive oil made from cottonseeds to the horsemeat scandal in the European Union.[10]

19.    In terms of quality, vanilla is considered  a "high-risk product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings etc."[11]

20.    Due to its versatility, demand and high value – second most expensive flavoring ingredient (after saffron) – there have been continual attempts to dilute, imitate, adulterate and "extend" vanilla.[12]

21.    Though "food fraud" has no agreed-upon definition and the typologies and categories often overlap, it encompasses a broad and ever-expanding range of techniques where the end result is consumers getting less than what they bargained for.

22.    For vanilla, the following general typologies of food fraud are illustrated in the left column while examples of these practices as applied to vanilla are in the right column.[13]

---

[8] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[9] Berenstein, 412.

[10] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[11] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[12] "Extend" in the context of flavoring is a modern and polite way to say "dilute" or "adulterate" – to make what is being "extended" go farther.  Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend."

[13] https://www.ifsqn.com/fsf/Understanding%20Food%20Fraud.pdf

| Type | Example |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans;<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception. |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla;[14]<br>• Annatto and turmeric in vanilla ice cream to darken the color to better resemble the hue of rich, yellow butter. |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar. |

---

[14] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

| | |
|---|---|
| ➤ Ingredient list deception[15] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor. |
| ➤ Diluting/Extending | • Combination with a variety of flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla."[16] |
| | • "Spiking" of vanilla through addition of natural flavors which simulate the taste of vanilla, contrary to consumer expectations and law. |

23.    As shown below, the "food fraud" typologies evident in the Products include one or more of the above-described types.

## III. The Products are Misleading Because Their Labeling Misrepresents the Amount and Type of Vanilla Contained

24.    The Products are represented as, or containing, vanilla ice cream and vanilla light ice cream on the labels, in point-of-sale marketing, retailers' display ads and promotions, websites, television and/or radio ads.[17]

25.    To protect consumers from being deceived by vanilla ice cream products that purport

---

[15] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

[16] Berenstein, 423.

[17] 21 C.F.R. § 135.110(f)(6) (applying identical labeling for vanilla ice cream when combined with other flavors, i.e., Neapolitan).

to contain vanilla but do not or contain less vanilla, standards were developed to require conspicuous, accurate and non-misleading labeling that conforms with consumer expectations.[18]

26.    By law, vanilla refers to "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[19]

27.    Vanilla extract and flavor differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[20]

28.    For almost half a century, consumers have expected vanilla ice cream to contain real vanilla derived from vanilla beans as the exclusive source of the flavor – designated as vanilla flavor or vanilla extract on the ingredient list ("Category 1").[21]

29.    Where an ice cream product contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, the product is correctly labeled with the name common name of the characterizing flavor followed by "ice cream," i.e., vanilla flavored ice cream.

30.    Where an ice cream product contains a natural characterizing flavor and an artificial flavor simulating it, the artificial flavor predominates, or if only artificial flavor is used, the product is correctly and non-misleadingly named "artificially flavored" preceding the characterizing flavor and "ice cream."

31.    Any flavors which does not derive from the characterizing flavor is considered an artificial flavor when it comes to ice cream.

32.    This distinction is established by law and owes in part to ice cream being a high quality, natural and simple food, and due to the effect the freezing and mixing may have with

---

[18] 21 C.F.R. § 169.175-182.
[19] 21 C.F.R. §169.3(c)
[20] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.).
[21] 21 C.F.R. § 135.110(f)(2)(i); 21 C.F.R. § 169.175-182.

respect to the incorporation of the flavorings.

33.    Natural flavor compounds that simulate vanilla but are not derived from the characterizing flavor (i.e., vanilla) may be used in ice cream but the product must be labeled as "-flavored" instead of "characterizing flavor ice cream," as long as the flavor from the characterizing flavor predominates.

34.    The purpose of this requirement is to consumers are not misled by companies giving them less than expected amounts of the actual characterizing flavor ingredients, yet not disclosing this on the front label in a conspicuous manner.

35.    The table below attempts to summarize the requirements of law which protect consumers from being deceived.

| Contains Non-Vanilla Flavors? | Does Flavor from Characterizing Flavor Predominate? | Front Label | Category |
|---|---|---|---|
| No | N/A (only vanilla) | Vanilla Ice Cream | I[22] |
| Yes | Yes | Vanilla Flavored Ice Cream | II[23] |
| Yes | No | Artificially Flavored Vanilla Ice Cream | III[24] |

IV. All Natural Ice Cream Products are Misleading

36.    The All Natural Ice Cream Products are represented as "vanilla ice cream" and expected by consumers to only contain flavor derived from the characterizing flavor, vanilla.[25]

37.    The consumer gets the impression that vanilla is the sole flavor source due to the front label representations including (1) the name, "Homemade Vanilla," (2) "All Natural Ice

---

[22] 21 C.F.R. § 135.110(f)(2)(i)
[23] 21 C.F.R. § 135.110(f)(2)(ii)
[24] 21 C.F.R. § 135.110(f)(2)(iii)
[25] Category I.

Cream," (3) absence of the term "flavored" or "artificially flavored," or variations thereof, indicating a product that contains only flavor from the characterizing flavor – vanilla, (4) vanilla flower vignette, (5) the list of ingredients on the front label and (6) "Naturally Simple" on the carton top.



A. "Ingredient List" on Front Label is Misleading Since it Omits Ingredients

38.   The list of ingredients on the front label is deceptive because it lists what appears to be the only ingredients in the Products – milk, cream, sugar and vanilla in descending order of predominance by weight.

39.   Consumers know that the main ingredients for ice cream are milk, cream and sugar and the flavoring is contained in amounts less than other ingredients.

40.   It is plausible to expect the Products to contain only these four ingredients in part because the side panel states:



**Naturally Simple.**

Made with the same ingredients you would use to make ice cream at home.

41.    Milk, cream, sugar and vanilla are all ingredients that consumers could use to make ice cream at home and can find in their pantry.

42.    By listing the ingredients on the front label, it gives the impression that these are all the ingredients used in the Products, as it permissible to either list them on the principal display panel or the information panel, in descending order of predominance by weight.[26]

43.    This is a reasonable belief because no reasonable consumer would expect that where a company is so forthright to declare a product's ingredients on the front label, the listing of ingredients in other locations on the product would not differ, since this would be too easy for the consumer to notice if they chose to.

44.    It is the equivalent of the magician who turns his pockets and top hat inside out so as to convey to the audience, "nothing to see here."

45.    Listing these ingredients on the front label gives a false assurance to the consumer that the representations are transparent and forthright, and that vanilla is the exclusive flavor source.

B.  The Second Ingredient List Reveals Flavoring Not Exclusively from Vanilla

---

[26] 21 C.F.R. § 101.4(a)(1).

46.     The representations that the vanilla flavor is exclusively derived from vanilla beans is shown to be misleading because the ingredient list *on the back of the carton* reveals the Product contains "Vanilla, Natural Flavors," presented with the Nutrition Facts below.

**Nutrition Facts**

9 servings per container
**Serving size   2/3 cup (94g)**

Amount per serving
**Calories      210**

| | % Daily Value* |
|---|---|
| **Total Fat** 12g | **15%** |
| Saturated Fat 7g | **35%** |
| *Trans* Fat 0g | |
| **Cholesterol** 45mg | **15%** |
| **Sodium** 70mg | **3%** |
| **Total Carbohydrate** 22g | **8%** |
| Dietary Fiber 0g | **0%** |
| Total Sugars 21g | |
| Includes 15g Added Sugars | **30%** |
| **Protein** 4g | |

Vit. D 0mcg 0%  •  Calcium 158mg 10%
Iron 0mg 0%  •  Potas. 122mg  2%

**INGREDIENTS:** Nonfat Milk*, Cream*, Sugar, Vanilla, Natural Flavors.

**INGREDIENTS:** Nonfat Milk, Cream, Sugar, Vanilla, Natural Flavors.

47.     The presence of flavor not derived from vanilla is inconsistent with vanilla ice cream as expected by consumers and required by law.

C.   Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

48.     As opposed to the general flavoring regulations, a natural flavor in the context of ice cream means a flavor that was derived from the product whose flavor is simulated – i.e., vanilla ice cream is only permitted to contain flavor derived from vanilla beans.

49.     The flavoring is not exclusively from vanilla because if it were, it would not be necessary to list "Natural Flavors."

50.     Defendant's listing of "natural flavor" in addition to vanilla (in the extract or flavor

form) is a tacit acknowledgement that the "natural flavor" is not a synonym for the required vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

51.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavor) but designate it with a general term perceived by consumers to cost less money and appearing on most foods ("natural flavor").

D.  Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients

52.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[27]

53.    The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[28]

54.    However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar or plant fiber.

55.    While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

56.    This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

57.    For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose

---

[27] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[28] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).

flavor it simulates.[29]

58.    This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

59.    This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[30]

60.    Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

E.    "Vanilla, Natural Flavors" Refers to Vanilla with Other Natural Flavors ("Vanilla WONF")

61.    It is probable that the flavoring ingredients are not separately added to the ice cream mix, for reasons of processing, convenience and ability to create a flavor combination product that enhances, simulates, resembles and extends the vanilla.

62.    It is likely, based on industry customs and trade practice, that defendant purchased an ingredient from a flavor supplier identified as "Vanilla (extract or flavor) With Other Natural Flavors" ("Vanilla WONF").

63.    No allegation is made that defendant identified the ingredients it used incorrectly, as it appears the separate listing of vanilla and natural flavor is consistent with law.

64.    While "natural flavor" is a permitted name for the purposes of the ingredient list, it does not describe the flavoring defendant purchases from a supplier.

65.    The natural flavor used will depend on the type of food.

66.    In vanilla ice cream, it is misleading to label ingredients which simulate, reinforce and extend vanilla as a "natural flavor" or "Vanilla extract/flavor with other natural flavor" because

---

[29] 21 C.F.R. § 101.22(a)(3)
[30] In contrast to the regulations at 21 C.F.R. § 101.22.

it misleadingly implies that the flavor is derived from vanilla beans, whose flavor it simulates.[31]

67.    In the context of vanilla ice cream, WONF flavors would be designated where there is a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated and other natural flavor [synthetic or artificial vanillin, compounds obtained from natural sources as understood by the general flavoring regulations] which simulates, extends, resembles or reinforces the characterizing flavor.

68.    No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or extract because this would result in the spiking of the vanilla flavor.

69.    This practice is deceptive because it will cause consumers to believe more vanilla is present than actually the case, they will pay more for such product and expect that all of the vanilla flavor is derived from vanilla beans.

V.  Premium Ice Creams

70.    The Premium Ice Cream Products are misleading because consumers get the impression that vanilla is the sole source of the flavor.

71.    This impression is because the front label and carton top state "Original Vanilla," "Original Recipe," "Premium Ice Cream," "Original Ice Cream," "Real Ice Cream" and the scoops of ice cream have the golden hue associated with real vanilla ice cream.

---

[31] 21 C.F.R. § 101.22(a)(3)



72.    Consumers are accustomed to vanilla ice cream designated by a manufacturer as "premium" varieties because real vanilla ice cream, with flavor only from vanilla, is known as a high quality, consistent and expensive product.

73.    The term "Original" as applied to "Vanilla" in the product name imply that the (1) Products contain vanilla and (2) the vanilla has not been modified or altered, based on the root word of original, "origin," referring to the beginning of something.

74.    The term "Original" as applied to "Recipe" imply a formulation of the Product that is free from guile or subterfuge, an impression enhanced by the side panel which states:



**Where We Make It Is Why It's Good.**

It all started in 1931 with just a few neighbors in Lancaster County, a place with rolling hills, friendly smiles and plenty of family heritage. Armor Frey founded Turkey Hill Dairy on traditional values like faith, hard work and an unwavering commitment to quality. Today, our neighborhood has grown, and millions have come to trust Turkey Hill to mean the finest in frozen desserts and beverages.

15

75.     The representations are misleading because Product's flavor is not derived exclusively from vanilla.

A.    The Principal Display Panel is Intentionally Confusing and Inconsistent with Law

76.     A close look at the front label reveals the Products are not actually flavored exclusively from vanilla, and in fact, may either contain no vanilla or a de minimis amount.

77.     Consumers rely on the front labels of products to present information in a straightforward, non-deceptive way that is conspicuous.

78.     The Premium Ice Cream front label appears to intentionally confuse and mislead consumers and is contrary to law.

79.     All products are required to have a statement of identity, presented in bold type on the principal display panel, in a size reasonably related to the most prominent printed matter on the front label, and in lines generally parallel to the base on which the package rests as it is designed to be displayed.[32]

80.     In the context of ice cream products, the name of the characterizing flavor is modified by the predominant flavor source and/or the addition of flavor not obtained from the characterizing flavor.

81.     If an ice cream product identifies its characterizing flavor in a way that is conspicuous and easily seen under customary conditions of purchase, the flavor designation is required to immediately and conspicuously precede or follow the name of the flavor, in a size reasonably related to the prominence of the name of the characterizing flavor.[33]

82.     This means that it is required to use the terms such as "Artificially Flavored Vanilla

---

[32] 21 C.F.R. § 101.3(b)(1); 101.3(d).
[33] 21 C.F.R. § 135.110(f)(3)(ii)

Ice Cream" together instead of "Artificially Flavored" placed in a way that consumers may not readily observe it.

83.     This is material because the naturally derived flavors are more expensive than flavors not obtained from the characterizing food.

84.     The name on the principal display panel of the label, "Original Vanilla" makes no reference nor is proximate to or accompanied by a statement of any non-vanilla flavor source, so the consumer will expect it to contain only vanilla flavor.

85.     A careful look at the front label reveals that in the lower left corner, the label states "NATURALLY & ARTIFICIALLY FLAVORED."



86.     The declaration "NATURALLY & ARTIFICIALLY FLAVORED" is misleading because (1) it is not visible nor conspicuous under customary conditions of purchase due to the insufficient background contrast between the font and color of the text and the background color of the ice cream scoop and (2) it is far removed from the name of the Product, "Original Vanilla."

87.     That "Original Vanilla," the characterizing flavor, is not accompanied, preceded or

followed by the term, "Artificially Flavored," so it would read "Artificially (and/or Naturally) Flavored Vanilla Ice Cream," is misleading because consumers will not know what they are paying for, and contrary to requirements of law intended to protect consumers.[34]

88.   Had the Products contained a conspicuous and contiguous statement of identity, the consumer would be able to know the truth of the Products.

B.   <u>Product's Ingredient List Reveals the Absence of Vanilla</u>

89.   That vanilla is not the exclusive flavoring source in the Product is also indicated in the ingredient list, presented below with the Nutrition Facts.



**INGREDIENTS:**  Milk, Cream, Corn Syrup, Sugar, Whey, Nonfat Milk, Cellulose Gel, Cellulose Gum, <mark>Natural And Artificial Flavors</mark>, Mono and Diglycerides, Carrageenan, <mark>Annatto Color</mark>.

90.   It is possible that the "Natural Flavors" in the Products is or contains a Vanilla with Other Natural Flavors.

---

[34] 21 C.F.R. § 135.110(f)(2)(ii).

91.     However, it is not necessary to consider whether the Product's Natural Flavors are consistent with an ice cream represented as "vanilla" because the ingredient list concedes the presence of "Artificial Flavors."

92.     Based on industry and trade practices and customs, the Natural Flavors component of the Products contain natural flavors other than natural characterizing flavor (from vanilla), which simulate the characterizing flavor and extend, resemble and enhance it.

93.     In other words, they trick consumers to think they are tasting real vanilla when they are not.

94.     The addition of such natural flavors to the Products means the natural characterizing flavor no longer predominates, rendering the "NATURALLY & ARTIFICIALLY FLAVORED" misleading because the term "NATURALLY" precedes "ARTIFICIALLY."

95.     This order of terms gives consumers the misimpression that flavor derived from the natural characterizing flavor – vanilla – predominates, when it does not.

C.   Coloring Reinforces the Deception that the Products are Vanilla Ice Cream

96.     The Products contain "Annatto Color," often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

97.     No allegation is made with respect to how annatto is declared or about its use, which is specifically permitted by regulation.[35]

98.     The added color modifies the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a darker shade like in the following stock

---

[35] 21 C.F.R. § 101.22(k)(3)

image, which is similar in appearance to the scoops on the Premium front labels.



99.   This coloring makes the consumer (1) less likely to question or probe into the amount and type of vanilla in the Products and (2) expect the Products to be similar to other, accurately labeled vanilla ice cream products.

VI. Products are Misleading Because Labeled and Named Similarly to Other Distinct Products

100.   Competitor brands adjacent to defendant's are labeled as vanilla ice cream and contain the amount and/or type of vanilla required by law and expected by consumers.

101.   The Products are misleading because they are marketed as vanilla ice cream adjacent to other vanilla ice cream products which contain vanilla flavoring exclusively from vanilla beans.

| Competitor Product | Product |
|---|---|




**INGREDIENTS:** Cream, Skim Milk, Cane Sugar, Egg Yolks, <mark>Vanilla Extract</mark>.

**INGREDIENTS:** Nonfat Milk, Cream, Sugar, <mark>Vanilla</mark>, <mark>Natural Flavors</mark>.

102.   Where two similarly labeled products are situated in the same category or section of a store and their representations as to quality and/or fill are identical, yet the former (Product) is lacking the quantity of the characterizing ingredient (vanilla) or qualities (of the Competitor Product), the reasonable consumer will be deceived.

103.   Accordingly, the reasonable consumer will and does pay more money for the former product under the false impression that it contains the equivalent amount and/or type of the characterizing ingredients and possesses such qualities.

VII. Conclusion

104.   The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

105.   Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

106.   The Products contain other representations which are misleading and deceptive.

107.   As a result of the false and misleading labeling, the All Natural and Premium Ice Cream Products are sold at premium prices, approximately no less than $6.99 and $5.49, respectively, per 1.5 quart (1.42L) (across the Product Lines), excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

21

108.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

109.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

110.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

111.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

112.   A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

113.   Named Plaintiff is a citizen of Nassau County, New York.

114.   Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

115.   The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

116.   Defendant is a Pennsylvania limited partnership with a principal place of business in Conestoga, Pennsylvania (Lancaster County).

117.   The member(s) of defendant are THGP Co., LLC ("Turkey Hill General Partnership Co., LLC") and THLP Co., LLC ("Turkey Hill Limited Partnership Co., LLC")

118.   The sole member of THGP Co., LLC and THLP Co., LLC is Peak Rock Capital Fund II LP, a Delaware limited partnership with a principal place of business in Austin, Texas (Travis County).

119.   The members of Peak Rock Capital Fund II LP are corporations formed under the laws of Delaware with their principal place of business in Travis County, Texas.

120.  During the class period, Named and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

121.  Named and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

122.  Named and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

123.  The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

124.  The present complaint contains Named Plaintiffs from: New York, who will represent his/her/their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

125.  Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named and Jane Doe Plaintiffs and class members are entitled to damages.

126.  Named and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

127.  Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

128.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

129.  Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest.

130.   Named and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

131.   Named and Jane Doe Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories

132.   Named and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiff asserting the consumer protection laws of his or her individual state.

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.   Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d.   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e.   California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f.   Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
g.   Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
k.   Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
o.   Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
p.   Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;
q.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
r.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
s.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
t.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

u.   Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;
v.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;
w.   Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
x.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;
y.   Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
z.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
aa.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
bb.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
cc.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
dd.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
ee.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
ff.  New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
gg.  New York General Business Law ("GBL") §§ 349 & 350;
hh.  North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;
ii.  North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
jj.  Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
kk.  Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
ll.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
mm.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;
nn.  Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
oo.  South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
pp.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
qq.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
rr.  Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;
ss.  Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;
tt.  Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
uu.  Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;
vv.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;
ww.  West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;
xx.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and
yy.  Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

133.   Named and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States.

134.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair

because (1) it gives the impression to consumers the Products contain more of the characterizing ingredients than they actually do and (2) the ingredient list does not dispel ambiguity but reinforces the front-label impression as to a greater amount of the characterizing ingredients.

135.   Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

136.   Named and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

137.   After mailing appropriate notice and demand, Named and/or Jane Doe Plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws Ch. 93A, etc.

138.   The representations and omissions were relied on by Named and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

139.   Named and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

140.   Defendant   misrepresented   the   misrepresented   the   substantive,   quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount than it actually was.

141.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

142.   This duty is based on defendant's position as an entity which has held itself out as

having special knowledge in the production, service and/or sale of the product type.

143.   The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector for this type of product.

144.   Named and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

145.   Named and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

146.   Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

147.   Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

148.   The Products warranted to Named and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

149.   Defendant's front labels informed Named and Jane Doe Plaintiffs the Products contained flavoring exclusively from vanilla beans, when this was not accurate.

150.   Defendant had a duty to disclose and/or provide a non-deceptive description of the Products' ingredients and knew or should have known same were false or misleading.

151.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector

152.   The Products warranted to Named and Jane Doe Plaintiffs and class members that

the characterizing ingredients, emphasized by the Products' name, description, label and/or website and marketing, was (1) present in an amount sufficient to characterize the Products and (2) the exclusive source of flavor in the Products.

153.   Named and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

154.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

155.   To the extent notice may be required, Named and Jane Doe Plaintiffs have or intend to send notice to defendant and reserve all rights to amendment of this complaint.

156.   Named and Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

157.   Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

158.   Defendant's purpose was to sell a product which contained a valuable and desired characterizing ingredient or flavor, and represent the Products were exclusively or predominantly flavored from that food, and contained sufficient independent amounts of same such that they would accurately be described by the product name, representations and marketing.

159.   The Products were not flavored exclusively from the characterizing ingredient.

160.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on their front labels when it was in a position to disclose this but did not accurately describe the nature of the Products.

161.   Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with this characterizing ingredient for

the above-described reasons.

162. Named and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

163. Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

164. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Named and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** Named and Jane Doe Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 20, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

2:19-cv-04794
United States District Court
Eastern District of New York

Russell Kane, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Turkey Hill, L.P.

Defendant

# Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 20, 2019

/s/ Spencer Sheehan
Spencer Sheehan